1

2

3

4

5

6                     UNITED STATES DISTRICT COURT

7                          DISTRICT OF NEVADA

8                                   * * *
                                      )
9   GEORGE LUSTER,                    )
                                      )
10              Plaintiff,            )              2:04-CV-00281-LRH-LRL
                                      )
11  v.                                )
                                      )              ORDER
12  WARDEN JAMES SCHOMIG, et al.,     )
                                      )
13              Defendants.           )
                                      )
14  _____  )

15          Presently before the court is Defendants James Schomig and Martha Simms' (collectively

16  "Defendants") Motion to Dismiss/Motion for Summary Judgment (#84[1]).  Plaintiff George Luster

17  has filed an opposition (#102) to which Defendants replied (#103).

18  **I.      Facts and Procedural History**

19          This is a civil rights dispute arising out of Plaintiff's incarceration at High Sierra State

20  Prison ("prison") in Indian Springs, Nevada.  When this dispute arose, Defendant Schomig was the

21  warden of the prison, and Defendant Simms was a prison employee.  Plaintiff alleges Defendants

22  deprived him of his rights under the First, Eighth, and Fourteenth Amendments to the United States

23  Constitution in violation of 42 U.S.C. § 1983 by (1) failing to provide adequate lighting in his cell,

24  (2) failing to respond to complaints about the lighting, and (3) failing to provide adequate

25

26  _____

        [1] Refers to the court's docket number.

1   procedures to challenge the lighting.

2   **II.     Standard of Review**

3       **A.  Motion to Dismiss**

4        Defendants seek to dismiss Plaintiff's claims pursuant to federal rule of civil procedure

5   12(b)(6) for failure to state a claim upon which relief can be granted.  In considering "a motion to

6   dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most

7   favorable to the non-moving party."  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d

8   658, 661 (9th Cir. 1998) (citation omitted).  However, a court does not necessarily assume the truth

9   of legal conclusions merely because they are cast in the form of factual allegations in a plaintiff's

10  complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

11       There is a strong presumption against dismissing an action for failure to state a claim.  *See*

12  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is

13  not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence

14  in support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

15  *grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  However, a plaintiff's obligation to

16  provide the grounds of his entitlement to relief requires more than labels, conclusions, and a

17  formulaic recitation of the elements of the cause of action.  *Bell Atlantic Corp. v. Twombly*, 127

18  S.Ct. 1955, 1965 (2007).  "Factual allegations must be enough to raise a right to relief above the

19  speculative level on the assumption that all the allegations in the complaint are true (even if

20  doubtful in fact)."  *Id.* (internal citations omitted).

21      **B.  Motion for Summary Judgment**

22       Summary judgment is appropriate only when "the pleadings, depositions, answers to

23  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

24  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

25  law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

26

1    with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

2    to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

3    587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

4          The moving party bears the burden of informing the court of the basis for its motion, along

5    with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

6    477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

7    must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

8    find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

9    1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

10         To successfully rebut a motion for summary judgment, the non-moving party must point to

11   facts supported by the record that demonstrate a genuine issue of material fact.  *Reese v. Jefferson*

12   *Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the

13   outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

14   (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is

15   not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material

16   fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for

17   the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of

18   evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;

19   there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at 252.

20         The court will convert a motion to dismiss into a motion for summary judgment if the

21   parties submit matters outside the pleadings and the court relies on the material in making its

22   decision.  *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983).

23   ///

24   ///

25   ///

26

3

1  **III.    Discussion**

2  **A.  Eleventh Amendment Immunity**

3  Defendants first argue they are entitled to immunity as provided by the Eleventh

4  Amendment to the United States Constitution.  The Eleventh Amendment bars suits "in law or

5  equity, commenced or prosecuted against one of the United States by Citizens of another State, or

6  by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "In the absence of a waiver

7  by the state or a valid congressional override, under the Eleventh Amendment, agencies of the state

8  are immune for private damage actions or suits for injunctive relief brought in federal court."

9  *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).

10  Where a plaintiff seeks money damages against state agents and officers for actions taken in

11  their official capacities, the suit is essentially an action against the state itself.  *See Frew v.*

12  *Hawkins*, 540 U.S. 431, 437 (2004); *Brandon v. Holt*, 469 U.S. 464, 472 (1985).  Indeed, courts

13  have repeatedly held that state officials acting in their official capacity are entitled to immunity

14  against § 1983 claims for damages.  *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991); *Will v.*

15  *Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); *Wolfe v. Strankman*, 392 F.3d 358, 364-65

16  (9th Cir. 2004).

17  However, sovereign immunity does not bar a plaintiff from seeking prospective relief

18  against a state official in his or her official capacity under § 1983 because these "official-capacity

19  actions for prospective relief are not treated as actions against the State."  *Will v. Mich. Dep't of*

20  *State Police*, 491 U.S. 58, 71 n.10 (1989) (citations omitted).  Here, Plaintiff's official-capacity

21  claims seek only declaratory and injunctive relief.  Thus, sovereign immunity does not bar Plaintiff

22  from pursuing these claims.

23  **B.  Mootness**

24  On July 21, 2008, Plaintiff filed a "Notice of Change of Address" (#99), indicating that he

25  had been transferred to Lovelock Correction Center.  Where an inmate is transferred or otherwise

26

1  leaves a correctional institution while his claims for prospective relief are pending, the plaintiff's

2  claims are moot unless the plaintiff qualifies for a recognized exception to the mootness doctrine or

3  the suit has been certified as a class action. *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995).

4  Here, Plaintiff's claim has not been certified as a class action,[2] and Plaintiff has failed to

5  demonstrate that he otherwise qualifies for a mootness exception. As a result, Plaintiff's claim for

6  prospective relief is moot, and the court will grant summary judgment with regard to this claim.

7  **C. Personal Participation**

8  Next, Defendants contend that Plaintiff has failed to state a claim upon which relief can be

9  granted because Plaintiff fails to allege how each individual Defendant was personally involved in

10  the alleged constitutional deprivations. Liability under § 1983 cannot be based on a theory of

11  respondeat superior. *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978).

12  Thus, "A supervisor cannot be held personally liable under § 1983 for the constitutional

13  deprivations of his subordinates absent his participation or direction in the deprivation." *Ybarra v.*

14  *Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984) (*citing May v.*

15  *Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980)). Under § 1983, a person deprives another of a

16  constitutional right if he "does an affirmative act, participate in another's affirmative acts, or omits

17  to perform an act which he is legally required to do that causes the deprivation . . . ." *Johnson v.*

18  *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

19  **1.   Defendant Schomig**

20  Plaintiff alleges, "Warden Schomig has deliberately refused to provide [Plaintiff] adequate

21  cell lighting as prescribed by both doctors Hanf & Sandberry." (Compl. (#21) ¶ 7.) As a result of

22

23      [2] Even if Plaintiff sought to certify a class, he would not have standing to seek declaratory or injunctive

24  relief on behalf of the other prisoners. Standing requires a plaintiff to demonstrate injury in fact, causation, and
    redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A person cannot predicate standing

25  on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Allee*
    *v. Medrano*, 416 U.S. 802-828-29 (1974). Here, because Plaintiff no longer suffers the alleged injury of lack

26  of adequate lighting, he lacks standing to sue on behalf of the other inmates.

1    this refusal, Plaintiff alleges Defendant Schomig caused Plaintiff to undergo cruel and unusual

2    punishment.  In addition, Plaintiff alleges Defendant Schomig refused to provide Plaintiff with

3    meaningful access to grievance procedures.

4         Plaintiff has failed to provide any evidence indicating that Defendant Schomig was aware of

5    Plaintiff's complaints about the adequacy of his cell lighting or Plaintiff's request for grievance

6    forms.[3]  Absent such evidence, no reasonable jury could conclude that Defendant Schomig played

7    any role in the alleged constitutional deprivations.  Accordingly, summary judgment with regard to

8    Plaintiff's claims against Defendant Schomig is appropriate.[4]

9         **2.    Defendant Simms**

10        As to Defendant Simms, the complaint alleges Defendant Simms failed to respond to

11   Plaintiff's requests to remedy the allegedly inadequate lighting and to provide Plaintiff with

12   requested grievance forms.  Defendant Simms was the prison's "grievance coordinator."  As such,

13   she was responsible for supervising the inmate grievance process.

14        Plaintiff has provided evidence indicating that he requested grievance forms.  After Plaintiff

15   apparently was not provided with the requested forms, Plaintiff filed an informal grievance

16   addressed to Defendant Simms complaining about the lack of adequate lighting in his cell.  Plaintiff

17   maintains that Defendant Simms never responded to either his request for grievance forms or his

18   informal complaint.  Defendants have failed to rebut this contention in any way or otherwise

19   explain why Defendant Simms failed to respond.  Thus, at this time, Defendants have failed to meet

20   their burden.  Accordingly, summary judgment as to Plaintiff's claims against Defendant Simms

21

22        [3] Plaintiff argues several physician reports demonstrate that Defendant Schomig was aware of his
     requests to remedy the lighting in his cell.  However, for the most part the court is unable to decipher what these
23   reports say.  Moreover, to the extent that the reports do conclude that Plaintiff's eye problems were a result of
     inadequate lighting, Plaintiff has provided no evidence demonstrating that Defendant Schomig ever received
24   or was otherwise aware of the reports.

25        [4] Because the parties have submitted evidence upon which the court has relied in making its decision,
     the court treats this and the remaining challenges as being contained in a motion for summary judgment rather
26   than a motion to dismiss.

1   based on a lack of personal participation is not appropriate.

2       **D. Qualified Immunity**

3       Defendants next contend that they are entitled to qualified immunity.  Qualified immunity

4   protects state officials from civil liability for damages resulting from discretionary acts, so long as

5   those acts do not violate clearly established constitutional or statutory rights of which a reasonable

6   person would have known.  *Harlow v. Fitzgerald*, U.S. 800, 917-18 (1982).  Qualified immunity is

7   an "entitlement not to stand trial or face the other burdens of litigation" and is an appropriate basis

8   for granting summary judgment.  *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001) (citations omitted).

9       In  *Saucier*, the Supreme Court established a two-step evaluation of qualified immunity,

10  which has also been adopted by the Ninth Circuit.  *See, e.g.*, *Johnson v. County of Los Angeles*, 340

11  F.3d 787, 791 (9th Cir. 2003); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

12  The first step in the *Saucier* qualified immunity analysis is to determine whether, taken in the light

13  most favorable to the party asserting the injury, the facts alleged show the official's conduct

14  violated the plaintiff's constitutional rights.  *Saucier*, 533 U.S. at 201.  If there is no constitutional

15  violation, then the officer is entitled to qualified immunity.  *Id.*  However, if the court finds that a

16  constitutional violation has been established, the second step of the *Saucier* analysis requires the

17  court to determine whether the constitutional right was clearly established at the time of the

18  violation.  *Id.*  "If the law did not put the officer on notice that his conduct would be clearly

19  unlawful, summary judgment based on qualified immunity is appropriate."  *Id.* at 202.

20      The Supreme Court recently held that the two-step sequence adopted in *Saucier* is no longer

21  mandatory.  *Pearson v. Callahan*, 129 S.Ct. 808, 813 (2009).  Nonetheless, the *Pearson* decision

22  authorizes lower courts to "exercise their sound discretion in deciding which of the two prongs of

23  the qualified immunity analysis should be addressed first in light of the circumstances in the

24  particular case at hand."  *Id.* at 818.

25      Here, Defendants do not dispute that the right to adequate lighting was clearly established at

26

7

the time of the alleged violation.  Instead, Defendants argue only that their conduct did not violate

Plaintiff's constitutional rights.  Accordingly, the court will follow the *Saucier* approach and first

consider whether Defendant Simms has violated Plaintiff's rights afforded by the First, Eighth, and

Fourteenth Amendments.[5]

### 1.    Eighth Amendment

Plaintiff alleges Defendant Simms' failure to provide adequate lighting subjected him to

cruel and unusual punishment in violation of the Eight Amendment.  The Eighth Amendment

prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic

concepts of dignity, civilized standards, humanity and decency."  *Estelle v. Gamble*, 429 U.S. 97,

102 (1976) (citation and internal quotations omitted).

Two requirements must be met in order to find that a prison official violated the Eighth

Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "First, the deprivation alleged must

be, objectively sufficiently serious[;] a prison official's act or omission must result in the denial of

the minimal civilized measure of life's necessities."  *Id*. (citations and internal quotations omitted).

Second, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable state

of mind."  *Id*.  In the Eighth Amendment context, the "sufficiently culpable state of mind" is one of

deliberate indifference to inmate health and safety.  *Id*.  The deliberate indifference standard lies

somewhere between negligence on the one end and purpose or knowledge at the other.  *Id*. at 835-

36.

### a.    Adequacy of the Lighting

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the

Eighth Amendment."  *Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985).  Defendants do not

dispute that a denial of adequate lighting may support an Eighth Amendment claim.  Instead,

---

[5] The court only considers the conduct of Defendant Simms because the court has granted summary
judgment with regard to all claims against Defendant Schomig.

Defendants argue Plaintiff has failed to demonstrate that the lighting in his cell was in fact inadequate.

In a sworn affidavit, Plaintiff states that only the guards can control the lights in his unit and that the lights are controlled by a single switch.  As a result, the lights in each cell are constantly at the same level.  Each cell has several large fluorescent tube lights and one small fluorescent tube night light.  From 7:30 in the morning to 10:00 at night, the only light turned on in the cells is the small fluorescent night light.  According to Plaintiff, the only time the lights are fully engaged is during mandatory inmate counts.  Defendants do not permit portable reading lamps in Plaintiff's unit because the unit is a lock-down unit.  Plaintiff states the inadequate lighting forces him to read and write via the light of the television.

In response, Defendants provide the affidavit of Scott Alexander, the facilities supervisor at the prison.  On January 31, 2006, Mr. Alexander directed his staff to conduct a light study on the inmate cells using a light meter.  The study indicates that the light level in the inmate cells was 25.2 foot candles, which is above the American Correctional Association's standard of 20 foot candles.  Thus, Defendants maintain Plaintiff has failed to demonstrate that the lighting in his cell was inadequate.

Defendants' argument is not persuasive, as several issues demonstrate the questionable relevance of Defendants' study.  First, Plaintiff complains that, from 7:30 a.m. to 10:00 p.m., only the smaller night light is engaged.  However, it appears that the study only tested the light when all of the fluorescent lights were engaged.  Defendants have failed to provide any evidence rebutting Plaintiff's assertion the night light was the only light engaged during the specified hours.  Thus, neither the study nor any other evidence addresses Plaintiff's concern with the adequacy of the lighting in his cell.[6]

---

[6] Neither party has addressed the role that natural light played in the amount of light reaching Plaintiff's cell during the daylight hours.  The court notes that should this case go to trial, Plaintiff will face a difficult burden in establishing the inadequacy of any daylight plus the light provided by the night light.

9

Further, it appears that the large fluorescent lights emit 2120 lumens, whereas the small night light emits only 8.9 lumens. Accordingly, although Defendants did not test the night light, based on the substantially fewer number of lumens emitted by the night light, it is likely that the number of foot candles emitted by the night light is significantly less than the number of foot candles emitted by the larger lights. Finally, the study does not indicate whether, from the time Plaintiff's complaints began in 2003 to the time of the study in 2006, Defendants adjusted the lighting in the inmate cells. Based on these discrepancies, the court finds that Defendants have failed to meet their burden and that genuine issues of material fact remain concerning whether the lighting in Plaintiff's cell was in fact inadequate.[7]

Defendants also note that beyond Plaintiff's subjective conclusions, Plaintiff has failed to provide evidence indicating that the allegedly inadequate lighting caused Plaintiff's eye-related problems. Defendants do not dispute that in response to Plaintiff's complaints about headaches and eyestrain, Defendants permitted Plaintiff to see two doctors. One of the doctors proscribed Plaintiff with corrective lenses. While neither of the doctor's conclusively reported that Plaintiff's headaches and eyestrain problems were the result of inadequate lighting in Plaintiff's cell, it appears that one of the doctor's may have indicated that he would recommend that the prison address the lighting issue. (*See* Def.'s Mot. Summ. J. (#84), Ex. M.)

As the moving party, Defendants bear the burden of demonstrating a lack of material facts concerning the cause of Plaintiff's eye-related problems. Defendants have failed to provide any evidence rebutting Plaintiff's contention that he informed the doctors of the inadequate lighting. Moreover, Defendants have failed to provide any evidence indicating that the doctors concluded

---

[7] Both parties also cite a study of cell lighting conducted in relation to another inmate's complaints. Again, this study does not demonstrate that the lighting in Plaintiff's cell was adequate at the time of his complaints. According to the study, when all of the lights in the cell were engaged, the light meters read from between 73.4 foot candles to 75.9 foot candles. While this reading is well above the American Correctional Association's standard of 20 foot candles, the reading is inconsistent with the study conducted in relation to the present case, which indicating that the light meter read 25.2 foot candles. Additionally, as with the above-cited study, this study only measured the amount of light emitted when all of the lights were engaged.

that the eye strain was unrelated to the inadequate lighting.  To the contrary, beyond their own

conclusions, Defendants have failed to provide any evidence indicating that Plaintiff's eye strain

and headaches were unrelated to the allegedly inadequate lighting.  Thus, at this time Defendants

have failed to meet their burden, and genuine issues of material fact remain concerning the cause of

Plaintiff's eye-related problems.  Accordingly, summary judgment is not appropriate.

### b.      Deliberate Indifference

To establish an Eighth Amendment violation, Plaintiff must also demonstrate that

Defendant Simms acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.  In

the Eighth Amendment context, the "sufficiently culpable state of mind" is one of deliberate

indifference to inmate health and safety.  *Id*.  The deliberate indifference standard lies somewhere

between negligence on the one end and purpose or knowledge at the other.  *Id*. at 835-36.

Here, although the prison responded to Plaintiff's complaints about eyestrain and headaches

by permitting Plaintiff to see several physicians, Defendant Simms knew of Plaintiff's complaints

regarding the adequacy of the lighting and apparently completely failed to address those

complaints.  Defendants have not provided any evidence to the contrary.  As a result, the court

finds that there are genuine issues of material fact concerning whether Defendant Simms acted with

deliberate indifference in failing to address Plaintiff's complaints and permitting the allegedly

inadequate cell lighting to continue.

### 2.      First and Fourteenth Amendments

Plaintiff alleges that by failing to provide him with grievance forms and by failing to

respond to his complaints, Defendant Simms violated his First Amendment right to meaningful

access to the courts and his Fourteenth Amendment right to due process.  In the motion for

summary judgment, Defendants argue that Plaintiff's claims are moot because he now has access to

the court.

Defendants' argument is unpersuasive.  Defendants appear to assume that the only relief

11

available to Plaintiff for his First and Fourteenth Amendment claims is access to a venue in which Plaintiff can air his grievances.  However, Plaintiff seeks and in theory could potentially receive damages as a result of the harm suffered due to the delay in remedying the allegedly inadequate lighting.  Indeed, in the complaint, Plaintiff alleges that the delay has caused him eye strain, sight loss, headaches, pain and suffering, and emotional anguish.

Although it is not at all clear that Plaintiff will ultimately be able to demonstrate such harm from the delay, Plaintiff's claims are not moot.  Instead, Plaintiff is entitled to a review on the merits of his First and Fourteenth Amendment claims.  As mootness is the only basis upon which Defendants assert their motion for summary judgment, the court will deny the motion for summary judgment as to the First and Fourteenth Amendment claims.

**IV.     Conclusion**

To summarize, the court will grant summary judgment as to Plaintiff's claims against Defendants in their official capacities.  Likewise, the court will grant summary judgment with regard to each of Plaintiff's claims against Defendant Schomig.  However, the court will deny summary judgment as to Plaintiff's First, Eighth, and Fourteenth Amendment claims against Defendant Simms.

///

///

///

///

///

///

///

///

///

1       IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#84) is

2  hereby GRANTED in part and DENIED in part.

3       IT IS FURTHER ORDERED that this case is referred to the Honorable Lawrence R. Leavitt

4  for the purpose of conducting a settlement conference.

5       IT IS FURTHER ORDERED that if settlement is unsuccessful, the parties shall lodge their

6  proposed joint pretrial order within twenty (20) days of the settlement conference.

7       IT IS SO ORDERED.

8       DATED this 12th day of March, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

13